Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 725 | **DATE** | 1/15/2002 |
| **CASE TITLE** | Brennan vs. The Paul Revere Life | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court grants the defendants' motion for summary judgment (54 and 55) as to Counts 3 and 4, but otherwise denies the motions. Additionally, the Court denies as moot both sides' motions to strike (85 and 60). Brennan's motion to compel depositions (92) is likewise denied as moot. The case is set for a status hearing on 2/1/02 and 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 16 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 93 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | JAN 16 2002 date mailed notice | |
| OR | courtroom deputy's initials | 02 JAN 15 PM 4:45 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY J. BRENNAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 00 C 0725 |
| ) | |
| THE PAUL REVERE LIFE ) | |
| INSURANCE COMPANY, PROVIDENT) | |
| COMPANIES, INC. AND PROVIDENT ) | |
| LIFE AND ACCIDENT INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
JAN 1 6 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Timothy Brennan was a trader in the thirty-year bond pit on the floor of the Chicago Board of Trade. In 1989 he purchased an "own occupation" disability income policy from the Paul Revere Life Insurance Company; the policy provided for disability benefits of $6,000 a month, with annual cost-of-living adjustments, in the event that Brennan became unable to work as a trader. Brennan paid all premiums due on the policy for eight years.

On May 16, 1997, Brennan had cataract surgery on his right eye. Following that surgery (and possibly because of that surgery though the record is unclear), Brennan was diagnosed with a detached retina; he lost half his vision in that eye. After additional procedures and treatment, Brennan's vision improved but was never fully recovered. On May 21, 1997, Brennan notified Paul Revere, which had since been acquired by Provident,[1] of his disability; he filed a formal

---

[1]On March 27, 1997 Paul Revere became an indirect wholly-owned subsidiary of Provident Companies, Inc., which acts as a holding company for a number of insurance company and non-insurance company subsidiaries. On June 30, 1999 Unum Corporation merged with and into Provident Companies,

claim for benefits under his "own occupation" policy on June 26, 1997. Brennan's retinal specialist, Dr. Kirk Packo, sent Paul Revere status reports in September, November and December 1997 indicating that Brennan's progress was unpredictable and undetermined; he stated that he had no idea when Brennan would be able to return to work. In February 1998, Dr. Packo wrote to Michael Speroni, the claim representative at Paul Revere handling Brennan's claim, indicating that Brennan continued to suffer a "significant deterioration in loss of peripheral visual field," which would prevent Brennan from returning to work as a pit trader. Plaintiff's Exhibit 16. Packo further indicated that Brennan's "visual field deficit will remain permanent without anticipated improvement in the future." *Id.*

When Brennan first presented his claim to Paul Revere, the adjuster concluded that Brennan was, in fact, disabled within the meaning of his policy and Paul Revere therefore paid benefits under the policy beginning in September 1997 (the policy had a 90-day exclusion). Later, however, in March 1998, Paul Revere's in-house medical consultant, Dr. Edward Alvino, suggested that the company obtain an independent medical examination of Brennan; the defendants contend that the consultant suggested the IME because he questioned Dr. Packo's opinion concerning Brennan's ability to return to his old job. Dr. William Deutsch, who was retained through GENEX, a disability management company and Provident subsidiary, conducted the IME on November 25, 1998. Based on the IME, Dr. Deutsch concluded that Brennan's "visual acuity of 20/40 is approximately 85% of normal [and his] visual field constriction is also about 15% less than what would be considered normal." Defendants' Exhibit

---

Inc., and the resulting entity became known as UnumProvident Corporation. We refer to the Provident companies, in their various incarnations, as "Provident."

2

E, p. PRLCL00206. With respect to Brennan's ability to return to work, Dr. Deutsch stated as follows:

> [t]his would not be sufficient impairment to meet the criteria for disability for most occupations. Mr. Brennan, however, is quite convinced that he has lost the ability to perform with the 100% facility that he previously had in performing his activities as a trader. I am convinced that there is symptom magnification probably associated with a secondary gain in his complaints. The patient was quite cooperative in the examination and showed no evidence of malingering. *Id.*

After receiving Deutsch's letter Dr. Alvino called Deutsch to clarify what he meant by "most occupations." Deutsch explained that he did not believe Brennan's visual deficit would preclude him from doing his job as a pit trader; in fact, Alvino recalled, Deutsch said that Brennan's eyesight would not prevent him from doing *any* job. Deposition of Edward Alvino, p. 46. On January 4, 1999, Speroni wrote to Brennan stating that based on the results of the IME "we do not feel that you are currently disabled from performing the duties of your occupation" and advising him that the company was therefore "unable to consider further benefits under your claim." Plaintiff's Exhibit 23. Brennan received his last benefits check in February 1999.

After receiving the January 4, 1999 letter from Speroni, Brennan apparently hired an attorney, who then attempted to get a full explanation from Provident of why the company was refusing to pay further benefits. On March 16, 1999 Speroni wrote to Brennan's attorney explaining that based on the IME and "additional information [Provident] developed, it does not appear that Mr. Brennan is disabled under the terms of the policy [and] does not have a payable claim." First Amended Complaint, Exhibit E. Speroni also advised that "[i]t also appears that there was an overpayment on this claim since your client has not been disabled since his recovery from surgery in or about early 1998. While we are not currently requesting repayment of this

3

overpayment, we reserve the right to do so in the future." Ultimately, Brennan sued for declaratory judgment, injunctive and other relief.

Paul Revere and the Provident Companies (now known as UnumProvident) filed separate motions for summary judgment on Counts 2, 3 and 4 of the complaint. Count 2 alleges that the defendants acted vexatiously and unreasonably in the way they investigated, handled and terminated Brennan's claim in violation of 215 ILCS 5/155; Count 3 alleges common law fraud; and Count 4 alleges consumer fraud and deceptive trade practices.[2] Summary judgment is appropriate on these counts "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage of the game, the Court views the facts and draws reasonable inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and is precluded from making any credibility determinations. *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986).

1.   Count 2 - Vexatious and Unreasonable Conduct Claim

In Count 2 of his amended complaint, Brennan alleges that the defendants acted vexatiously and unreasonably in investigating and terminating his claim; he seeks damages and attorney's fees under section 155 of the Illinois Insurance Code, 215 ILCS 5/155. That section provides "an extracontractual remedy to policyholders whose insurer refuses to recognize liability or pay a claim under a valid insurance policy in a vexatious and unreasonable manner."

---

[2]Count 1, which is not part of the summary judgment motions, seeks a declaratory judgment finding Brennan totally and permanently disabled within the meaning of his own occupation policy and directing the defendants to pay benefits until Brennan turns 65.

4

*Lyon Metal Products, L.L.C. v. Protection Mutual Insurance Company*, 321 Ill. App. 3d 330, 338, 747 N.E.2d 495, 502 (2001) (citing *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 520, 675 N.E.2d 897 (1996)). A delay in settling a claim may be vexatious if there is no bona fide dispute about coverage, *Janes v. Western States Insurance Company*, — N.E.2d —, No. 5-99-0763, 2001 WL 1003328, at * ____ (Ill. App. Ct. Aug. 31, 2001) (page references not yet available); on the other hand, "where a bona fide dispute concerning coverage exists, costs and sanctions are inappropriate." *State Farm Mutual Automobile Insurance Company v. Smith*, 197 Ill. 2d 369, 757 N.E.2d 881, 887 (2001) (*State Farm Mutual Automobile Insurance Company v. Fisher*, 315 Ill. App. 3d 1159, 1167, 735 N.E.2d 747, 754 (2000)). To determine whether the insurer's conduct was vexatious and unreasonable, the Court considers the insurer's conduct in the totality of the circumstances. *Price v. Universal Casualty Company*, 322 Ill. App. 3d 514, 517, 750 N.E.2d 739, 742 (2001).

Paul Revere argues that it is entitled to summary judgment on Brennan's vexatious and unreasonable conduct claim because there was a bona fide dispute as to coverage and because the "totality of the circumstances" shows that Paul Revere acted reasonably in handling Brennan's disability claim; Provident makes a similar argument in its motion. The Court disagrees. Based on the record before the Court, issues of fact exist as to whether the insurers (whether it was Paul Revere or Provident at that point) had a bona fide reason to dispute coverage. The record provides no basis for Provident's reluctance to accept Dr. Packo's assessment of Brennan's condition (other than an unwillingness to pay full benefits), and it is debatable whether the IME report prepared by Dr. Deutsch – arguably a hired gun for the insurers – was enough to justify the about-face the insurers did on Brennan's claim. The evidence would permit a trier of fact to infer

that Alvino recommended an IME on what amounts to a hunch, and neither he nor Deutsch seemed to know much if anything about Brennan's job. Although Provident ultimately brought in a vocational expert to address the particular demands of Brennan's job and to probe a little into what the job entailed and whether Brennan could return to work, it did not take these steps until *after* it decided to deny his claim. Based on this evidence, a trier of fact reasonably could conclude that the insurers' conduct was an after-the-fact attempt to bolster an unreasonable decision. Moreover, the fact that Steve Page, the field claim consultant who worked for Paul Revere and then Provident, testified that he destroyed all of his notes and any documents relating to his handling of Brennan's claim, Deposition of Steve Page, p. 16-17, 31, might also lend support to a finding that the insurers acted unreasonably.

Provident also argues that it is entitled to summary judgment on Count 2 because it did not issue the policy to Brennan and had no contractual relationship with him and therefore cannot be held liable under 215 ILCS 5/155. The Court rejects this argument. Based on the record before the Court, there are questions of fact concerning which defendant was responsible for handling – and rejecting – Brennan's claim. Although Michael Speroni, the claims representative who corresponded with Brennan, identified himself as a representative of Paul Revere, his letters were all written on Provident letterhead; he also testified that Provident, not Paul Revere, issued his paychecks. Deposition of Michael Speroni, p. 8-9. Additionally, Dr. Alvino, the medical consultant who initially suggested the IME and who got Dr. Deutsch involved in the case, worked for Provident, *see* Deposition of Edward Alvino, pp. 5-6, and Deutsch worked for a Provident subsidiary. In short, although the specific contours of each company's involvement and responsibility might remain unclear, we cannot conclude on this

record that Provident played no part in the handling and ultimate rejection of Brennan's claim.

    2.    <u>Counts 3 and 4 - Fraud and Consumer Fraud Claims</u>

In Counts 3 and 4, Brennan alleges that the defendants' conduct amounted to common law fraud (Count 3) and a violation of the Consumer Fraud and Deceptive Trade Practices Act (Count 4). To prove fraud, Brennan would have to show that the defendants made a false statement of fact, knowing it was false, that they intended the statement to induce Brennan to act, that Brennan in fact relied on the statement and that, as a result, he suffered damages. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). To prove a claim under the Consumer Fraud Act, Brennan would have to show a deceptive act or practice that occurred in the course of conduct involving trade or commerce and intent on the defendant's part that plaintiff rely on the deception. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75, 643 N.E.2d 734, 754 (1994).

In response to the defendants' summary judgment motions, Brennan clarified the focus of his fraud claims: "In contrast to [the breach of contract and vexatious and unreasonable delay claims], Brennan's fraud and consumer fraud claims focus on defendants' intent and representations at the time they issued the Policy to Brennan, and each and every time that they reaffirmed the Policy by accepting Brennan's premiums." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 10. Brennan argues, in substance, that defendants never intended to pay benefits and thus, in effect, issued an illusory policy. *See id.*, pp. 11-15. The problem with this is that virtually all of Brennan's evidence directed to this point concerns the practices of Provident, when it was Paul Revere that issued his policy. His evidence concerning Paul Revere consists of a single item – a July 26, 1984 memorandum to

Paul Revere claim representatives that one court construed as indicative of unfair claims settlement practices. *See Ingalls v. Paul Revere Life Insurance Group*, 561 N.W.2d 273, 282 (N.D. 1997). But this memo, by itself, cannot be construed as evidence that the policy was illusory and thus that the representation that benefits would be paid was false. Indeed, plaintiff himself does not argue that the memo is enough by itself, instead lumping it with the more substantial evidence concerning Provident. Under the circumstances, Brennan cannot maintain a fraud or consumer fraud claim against Paul Revere based on its issuance of an effectively illusory policy.

Because Provident did not issue the policy, any such claims against the Provident defendants must fail as well. Although it is true that Provident – against whom Brennan may in fact have evidence of the requisite intent – accepted Brennan's premiums after acquiring Paul Revere, Brennan has offered no authority to support his argument that the acceptance of premiums constitutes a false statement or deceptive act that would give rise to a claim for fraud or consumer fraud. In sum, the Court concludes that Brennan's evidence cannot support a fraud or consumer fraud claim and grants summary judgment in defendants' favor on Counts 3 and 4.

3. <u>Motions to Strike</u>

In addition to the summary judgment motions, the defendants filed a motion to strike certain paragraphs of Brennan's statement of additional facts, and Brennan filed a motion to strike portions of Ralph Mohney's affidavit and portions of defendants' statement of facts. Because none of the challenged material played any role in the Court's decision today, the motions are denied as moot.

## Conclusion

For the reasons explained above, the Court grants the defendants' motions for summary judgment [Docket Nos. 54 and 55] as to Counts 3 and 4, but otherwise denies the motions. Additionally, the Court denies as moot both sides' motions to strike [Docket Nos. 85 and 60]. Brennan's motion to compel depositions [Docket No. 92] is likewise denied as moot. The case is set for a status hearing on February 1, 2002 at 9:30 a.m.

Dated: January 15, 2002

MATTHEW F. KENNELLY
United States District Judge