# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 725 | **DATE** | 6/10/2002 |
| **CASE TITLE** | Brennan vs. The Paul Revere Life Insurance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies plaintiff's first motion in limine; grants in part and denies in part his second motion in limine; and grants his third motion in limine (109-1, 110-1 &b 111-10. In addition, the Court grants in part and denies in part defendants' motion in limine (112-10 as stated in this Opinion, and defers ruling on defendant's motion to bar the testimony and opinions of Susan Scanlan (113-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 1 2 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 127 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | JUN 1 2 2002 date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TIMOTHY J. BRENNAN, )
)
    Plaintiff, )
)
vs. ) Case No. 00 C 0725
)
THE PAUL REVERE LIFE INSURANCE )
COMPANY, PROVIDENT COMPANIES, )
INC., and PROVIDENT LIFE AND )
ACCIDENT INSURANCE COMPANY, )
)
    Defendants. )

DOCKETED
JUN 1 2 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Timothy Brennan was a floor trader at a local commodity exchange; he had a disability insurance policy issued by defendant Paul Revere Life Insurance Company that provided benefits if Brennan was unable to perform that occupation. Brennan has two claims remaining for trial: a breach of contract claim concerning defendants' termination of his insurance benefits, and a claim under 215 ILCS 5/155 for recovery of a statutory penalty and attorney's fees based on his allegation that the termination was "unreasonable and vexatious." The purpose of this Memorandum Opinion and Order is to rule on the parties' motions *in limine* and various other pretrial matters.

A.    **Plaintiff's Motions *in Limine***

    1.    **Plaintiff's earlier trading losses**

Brennan first moves *in limine* to exclude evidence of his motivation to return to work.

This consists of evidence that he sustained a $1.3 million loss on the trading floor, which resulted in his cutting a deal that required him to pay most or all of his earnings to his creditors. This, according to defendants, gave Brennan a motive not to return to work and thus to shade his claim of physical impairment to support his contention that he cannot return to work. The fact that Brennan's disability is premised on evidence that is partly subjective – regarding the extent to which the impairment of his peripheral vision prevents him from doing his former job – puts his credibility in that regard squarely in issue. The evidence is relevant, and its probative value is not outweighed by any potential for unfair prejudice. The Court therefore denies Brennan's motion to exclude this evidence. We will carefully circumscribe, however, the nature and extent of defendants' inquiry in this regard; they will not, for example, be permitted to introduce the reasons for the underlying liability unless Brennan brings up that issue. But it will be up to Brennan to object at the time of trial, as the Court cannot completely anticipate at this time all possible avenues of questioning on this topic.

2.  **Evidence regarding plaintiff's ability to perform other jobs**

Brennan next seeks to exclude evidence concerning his ability to do other jobs. In this regard, defendants propose to introduce evidence in three areas. First, they contend that Brennan's floor trader job also involved work as a "clerk," which they maintain he can still do despite his impaired vision. The Court agrees with defendants that this evidence is relevant to the issue of Brennan's alleged inability to perform his former occupation.

Next, defendants want to introduce evidence regarding Brennan's current work in a sales job and his ability to perform day-to-day tasks such as driving a car. Again, the Court agrees with defendants that this evidence may be relevant regarding the degree of impairment of

2

Brennan's vision and thus may bear, to some extent, on his ability to perform his former job. It is important to keep in mind, however, that the issue is not Brennan's ability to perform work generally, but rather his ability to perform his former job as a floor trader. The Court will leave it to plaintiff to object at trial if defendants' inquiry in this regard goes too far afield.

Finally, defendants want to introduce evidence that Brennan was able to trade commodities in an office using a computer screen; they say that they should be permitted to argue that this is the same occupation that Brennan performed on the floor of the exchange. The Court rejects this argument; the evidence is irrelevant and even if somehow marginally probative would be enormously and unfairly prejudicial. Brennan's insurance policy provided benefits if he was unable to perform his own occupation; it is undisputed that his occupation involved trading on the floor of the exchange, not in an office sitting at a desk. That is a different occupation, and one that defendants have failed to show bears in any way on the issue of Brennan's ability to work as a floor trader. *See Stender v. Provident Life and Accident Insurance Co.*, No. 98 C 1056, 2000 WL 875919, at *7-8 (N.D. Ill. June 29, 2000).

### 3. Evidence regarding plaintiff's medical malpractice suit

Brennan's third motion *in limine* seeks to exclude evidence relating to his medical malpractice suit against the doctors who performed his eye surgery. The defendants oppose the motion, arguing first that they are entitled to introduce the lawsuit to show that Brennan has a financial motive to shade his testimony because a win in this case would help him in the malpractice case. The Court rejects this argument. The fact that Brennan has another case pending does not give him any materially increased motive to testify falsely beyond that which may result from the fact that he hopes to win the present case. And even if evidence about the

3

other case had some limited probative value, it would be far outweighed by the unfair prejudice, confusion of the issues, and waste of time that would result from injecting the malpractice case into this one.

Defendants also want to introduce the malpractice case to undermine Brennan's argument that Dr. Deutsch, the companies' medical examiner, was a hired gun; evidently Brennan turned down another proposed medical examiner on the grounds that he was the partner of the physician Brennan is suing. But for defendants' purpose, it will suffice to allow them to elicit from Brennan the fact that he turned down the other doctor; his reason for doing that does not truly help defendants. Brennan, despite his request to exclude the malpractice case, will have to decide whether he wants to explain his reason for the turn-down; if so, he may open the door to admission of at least some evidence concerning the malpractice case.

### B. Defendants' Motions *in Limine*

The defendants have filed eighteen motions *in limine,* which we address in turn.

#### 1. Evidence of future damages

First, defendants seek to bar any evidence about Brennan's future damages; they argue that the evidence must be limited to the damages that have accrued under the contract to date. The motion is denied. Even the cases on which defendants rely recognize that a plaintiff may recover a judgment regarding future benefits in some instances – specifically, where he can show that the insurer completely repudiated the insurance contract. *E.g., New York Life Insurance Co. v. Viglas,* 297 U.S. 672, 680, 682 (1936); *Scherer v. The Equitable Life Assurance Society of the United States,* 190 F. Supp. 2d 629, 633 (S.D.N.Y. 2002). Under Illinois law, that happens when a contracting party "unequivocally and without justification renounces its duty to perform the

contract," *see Draper v. Frontier Insurance Co.*, 265 Ill. App. 3d 739, 745, 638 N.E.2d 1176, 1181 (1994), which is precisely what Brennan has alleged defendants did. Based on the current record, the issue of recovery of future benefits is properly presented to the jury.

   2.  **Evidence relating to defendants' practices generally and in other cases specifically; testimony of Dr. William Fiest**

Defendants' second motion asks the Court to bar evidence of claims handling, alleged bad faith, and vexatious conduct with respect to insureds other than Brennan; their eighth motion asks for an order precluding evidence regarding the manner and method by which they generally conducted business during period before Brennan presented his disability claim; and their fourteenth motion requests an order barring admission of any investigations, administrative proceedings, lawsuits, market conduct studies, reports, and other inquiries into their claims handling practices. Their third motion *in limine* seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies. Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times.

Though we agree with defendants that determination of their liability on the §155 claim is premised on their handling of Brennan's claim, that does not render irrelevant all evidence concerning their claims handling practices generally or other claims specifically, and none of the cases cited by defendant so hold. Under Federal Rule of Evidence 406, "[e]vidence of the habit of a person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." A good deal of the evidence Brennan seeks to offer in this regard falls neatly within

5

the scope of Rule 406; he contends that the evidence shows that defendants had a standard practice of targeting for denial or termination certain types of high-value claims (including the type Brennan made) and then coming up with evidence to support a denial.

Defendants note, and the Court agrees, that the admissibility of evidence offered under Rule 406 must be determined with great caution to ensure that what is denominated as "routine practice" evidence is not actually evidence of other acts offered to prove a party's propensity to act in conformity with its general character, which Rule 404(b) renders inadmissible. *See Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988). But that admonition cannot be read in a way that writes Rule 406 out of the Rules of Evidence. *Simplex* concerned an attempt to use specific instances of conduct to establish the existence of a general practice – evidence which directly implicates the concerns that motivated the general prohibition in Rule 404(b) and which therefore presents the risk that the court addressed. But the case did not concern evidence that tends to establish the existence of a routine practice more directly, such as by showing an entity had a general policy, procedure, or rule which covered the specific scenario involved in the litigation. Evidence of that type does not implicate Rule 404(b)'s concern with the misuse of evidence of specific instances of conduct. And in any event, *Simplex* did not impose a bar to "specific instance" evidence altogether[1]; rather it limited the use of such evidence to situations in which it shows a degree of repetition sufficient to reasonably give rise to "an inference of systemic conduct" that constituted the party's regular response to a given situation. *Id.* at 1293, 1294 (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 511

---

[1] Indeed, the Advisory Committee Notes to Rule 406 appear to specifically contemplate the use of evidence of particular instances of a party's conduct to establish the existence of a habit or routine practice. *See* Fed. R. Evid. 406, 1972 Advisory Committee Notes.

(4th Cir. 1977)). Indeed, just a little over a year after *Simplex* was decided, the Seventh Circuit, by a panel that included *Simplex's* author, upheld a trial court's admission, in an insurance breach-of-contract case, of evidence of the insurer's conduct in other similar situations for the purpose of showing the company's habit and routine practice. *Rosenburg v. Lincoln American Life Insurance Co.*, 883 F.2d 1328, 1336 (7th Cir. 1989).

Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in *Simplex* and *Rosenburg*. Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly. Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise has sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence. Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not

7

come close to that line.

Further, this evidence is admissible on both of Brennan's claims: it bears circumstantially on the validity of defendants' reason for terminating Brennan's benefits as well as on the question whether they acted vexatiously and unreasonably. For these reasons, the Court holds that the evidence relating to defendants' alleged practices regarding "round tabling" and "scrubbing" of claims is relevant and not unfairly prejudicial, and we therefore deny defendants' second, third, and eighth motions *in limine* to the extent they are aimed at such evidence.

As noted above, defendants' fourteenth motion *in limine* seeks to exclude any investigations, administrative proceedings, lawsuits, market conduct studies, reports or other inquiries into defendants' claims handling practices to the extent they involve claims other than Brennan's. The Court will preclude Brennan from introducing jury verdicts and court decisions from other cases. Even if such evidence is relevant – which the Court seriously doubts – the probative value of using a handful of specific instances that resulted in litigation to prove or illustrate defendants' methods of operation and alleged bad faith claims handling practices is slight. That marginal probative value is far outweighed by the unfair prejudice that would result to the defendants from the bare admission of the results of other lawsuits, or the extraordinary confusion of the issues and waste of time that would result if the particulars of those cases had to be aired before the jury, as likely would be the case if we decided to admit the verdicts and decisions.

With regard to decisions and actions by administrative agencies, the Court advised the parties at the initial session of the final pretrial conference that it could not determine, sight-unseen, whether such matters might be admissible to show some relevant aspect of defendants'

8

business practices or for some other purpose. The Court directed plaintiff to submit any such materials that he proposed to offer in evidence so that the Court could review them prior to the second session of the final pretrial conference. At that session, plaintiff's counsel advised the Court that plaintiff was withdrawing his request to introduce evidence of this type.

### 3. Arthur Andersen report to Maine Department of Insurance

Defendants' thirteenth motion *in limine* seeks to exclude a June 1999 report by the accounting firm Arthur Andersen relating to the merger between Provident Companies and Unum Life Insurance Company of America. Andersen was retained by the Maine Department of Insurance to report on various aspects of the merger, which that Department was required to approve. At the final pretrial conference, Brennan's counsel said that he wants to offer the Andersen report for a single reason – for its summary of a "market conduct" report prepared by the Illinois Department of Insurance concerning defendants' claim handling practices. This is not a proper basis to introduce the Arthur Andersen report in evidence. Even if the Illinois market conduct report were itself admissible, plaintiff has shown no proper basis under Rule 1006 to introduce Arthur Andersen's summary of it, which in any event would be inadmissible hearsay.

### 4. Undisclosed opinions of plaintiff's expert

In their fourth motion, the defendants seek to bar any undisclosed opinions by James Schultze, an experienced bond trader at the Chicago Board of Trade. Plaintiff's Rule 26(a)(2) disclosure regarding Schultze evidently stated only that he would "testify as to matters and opinions expressed and stated in his deposition." Though this disclosure plainly did not comply with Rule 26(a)(2)(B), defendants did not object to it and did not seek to strike the disclosure; instead they took Schultze's deposition and now seek to confine him to what he said in the

9

deposition. The Court agrees with defendants that under the circumstances, Schultze will be limited to the opinions he expressed in his deposition, though he need not deliver them verbatim. But until we hear the questions that will be asked of Schultze at trial, we will be unable to determine the particular contours of this ruling. Defendants will be required to make their objections, if they have any, during the course of Schultze's testimony; if plaintiff improperly attempts to take advantage of the Court's inability to predetermine the matter, we will take appropriate steps to avoid unfair prejudice to defendants.

### 5. Defendant's alleged tactics in this case

Defendants next ask the Court to bar evidence of certain litigation tactics that Brennan contends are indicative of defendants' bad faith. As explained by Brennan's counsel at the hearing on the motion, the evidence focuses on three episodes: the alleged misidentification of persons who purportedly had knowledge of relevant facts but turned out at their deposition to know nothing; the alleged failure to identify documents until a late stage of the litigation; and the submission of the affidavit of Gloria Langevin, which the Court previously found was untrue. The Court grants defendants' motion to exclude this evidence. The facts concerning the first two matters are equivocal and have not been shown to indicate an intent to conceal evidence. And though the Court sanctioned defendants for the submission of Langevin's false affidavit, we did so not because we believed that the defendant corporations had engaged in a deliberate effort to mislead, but primarily because they failed to exercise sufficient oversight concerning the veracity of the affidavit submitted by their employee. None of this evidence has any bearing on Brennan's breach of contract claim or his claim under §155.

### 6. Testimony of agent/broker who sold plaintiff the insurance policy

In their sixth motion *in limine*, defendants seek to bar the testimony of Michael Corrigan, the insurance agent or broker who sold Brennan the policy. Brennan says that he wants to call Corrigan to testify about the purpose of the policy and one of its riders, as well as the circumstances leading up to Brennan's purchase of the policy, including the fact that Brennan was given a flyer, purportedly prepared by Paul Revere, that compared its policy to another one he was considering. None of this evidence is relevant. There is no claim that the policy or the rider is ambiguous and thus no need for testimony from Corrigan regarding its purpose. And the circumstances leading up to Brennan's purchase of the policy likewise have no bearing on any contested issue in the case. The comparison sheet is similarly irrelevant; we have granted defendant summary judgment on Brennan's claim that he was fraudulently induced to purchase the policy, thus taking out of the case any claims that might make the circumstances of the purchase relevant and material.

### 7. Destruction of claim handler's handwritten notes

In their seventh motion *in limine*, defendants seek to bar evidence that Steve Page, who handled Brennan's claim for defendants, destroyed certain notes he made in relation to Brennan's claim. Defendants say that Page did this only after preparing a typed memorandum that included the contents of the notes. The motion to exclude this evidence is denied. This episode is relevant as part of the circumstantial evidence that, according to Brennan, shows that defendants had no basis for denying his claim and sanitized their files to remove evidence that might undermine their decision. We agree with defendants that this evidence may be characterized in a way that is innocuous and consistent with proper practice, but that is a matter properly left for

11

argument by counsel and consideration by the jury.

### 8. Testimony of certain of defendants' executives

Defendants next seek to bar the testimony of J. Harold Chandler (UnumProvident's chairman, president and chief executive officer) and Ralph Mohney (UnumProvident's senior vice president). Brennan has suggested that he intends to call Mohney to testify concerning defendants' claims handling practices and procedures generally, as well as the specific procedures employed in Brennan's case; he apparently intends to call Chandler to testify concerning the "round tables" and other processes allegedly geared toward promoting the claims-denying philosophy Brennan alleges defendants had and to discuss their procedure for resolving a difference of opinion between an insured's doctor and the insurer's medical examiner. Because both witnesses are outside the Court's subpoena power, Brennan will be required to offer their deposition testimony. Brennan has now submitted the portions of the depositions that he intends to offer, and defendants have elaborated on their objections. A separate order will be entered identifying which parts of the depositions will be admitted.

### 9. Evidence of plaintiff's payments of premiums

Defendants' tenth motion *in limine* seeks to exclude evidence of past, current or future premium payments Brennan has made or will make. The motion is denied; at a minimum, such evidence is relevant to show that Brennan performed his obligations under the insurance contract that he claims the defendants breached.

### 10. Evidence regarding plaintiff's claim for statutory interest

Defendants next seek to exclude evidence regarding Brennan's claim for statutory interest. The motion is granted without objection; the matter is one for the Court to determine

after trial in the event Brennan prevails.

### 11. Argument concerning defendants' prior payment of benefits

In their twelfth motion *in limine*, defendants seek to preclude Brennan from arguing that their payment of benefits under the policy constitutes an admission of liability or an acknowledgment that he is totally disabled. The motion is denied; the evidence is what it is, and the meaning to be attached to it is a point for the attorneys to argue to the jury, not for the Court to determine in advance of trial.

### 12. Characterization of payment to defendants' consulting physician

In their fifteenth motion *in limine*, defendants seek to preclude Brennan from characterizing Paul Revere's payment to Dr. Deutsch as a "rush" payment. Evidently after Dr. Deutsch submitted a bill to Paul Revere for his examination of Brennan, some unknown staff person at Paul Revere put through a payment request, marking it "ASAP." Brennan wants to be able to argue that this was a "rush" payment, which he says somehow bears on Dr. Deutsch's status as a hired gun or somehow supports Brennan's claim that the process that led to the termination of his benefits was a set-up. The Court does not see the connection. Plaintiff has done nothing to illuminate the actual significance of the "ASAP" designation, such as showing that this was not the standard practice, and thus his argument that this was out of the ordinary or indicative of sinister intentions is speculative. The document itself is admissible (defendant has not objected to its admission), but the proposed characterization is improper and will not be permitted.

### 13. Evidence regarding timing of defendants' retention of vocational consultant

Defendants next seek to preclude Brennan from arguing that Jacqueline Pickering, a

vocational consultant who opined that Brennan was able to perform his job, was retained only after defendants learned that Brennan had hired counsel. Brennan is primarily interested in the timing of Pickering's retention because it did not occur until after his benefits were terminated, but he also wants to introduce the fact that defendants had also learned by that time that he had retained counsel. He contends that the timing of these events is relevant as to whether Pickering was retained in a *bona fide* effort to evaluate his claim or rather to support a preconceived determination that he was not disabled. Though the Court agrees with defendants that the timing of Pickering's retention can likewise be explained as completely appropriate, the choice between these competing interpretations is properly made by the jury. The evidence is relevant and not unfairly prejudicial. Defendants contend that if plaintiff is permitted to introduce this "timing" evidence, they should be able to call as a witness the attorney plaintiff retained – his lead counsel at the upcoming trial – to explore the nature and content of his communications with the insurers' representatives. But defendants have not shown any real need to call counsel to elucidate these matters, assuming they are relevant (a question we do not now decide): most of the communications were in writing, and those that were not were memorialized by defendants' representatives, who are prepared to testify at trial. Defendants' request to call plaintiff's attorney is therefore denied.

### 14. Evidence concerning defendants' finances

Defendants' seventeenth motion *in limine* seeks to bar evidence concerning defendants' corporate size and assets. At the final pretrial conference, plaintiff's counsel advised that plaintiff proposed to introduce evidence that in 1993, Paul Revere posted a $423 million reserve for losses relating to disability insurance policies of the type issued to Brennan, which

14

supposedly was the result of liberalized underwriting practices in the late 1980's. Plaintiff maintains that the practice of targeting such claims for termination resulted from this loss. He also proposes to introduce a series of Paul Revere monthly reports covering the period from mid-1995 through mid-1997 which reported on the amounts saved by the company by the strategies it developed to deal with these types of claims. According to plaintiff, this evidence is part and parcel of the "habit and practice" evidence which the Court has previously found admissible. The Court disagrees. What we have found is pertinent to Brennan's claims are the practices that defendants used during the period of time in which his claim was denied – the early part of 1999. We have permitted Brennan to offer evidence regarding defendants' earlier use of the "round tabling" and "scrubbing" procedures not because what happened in earlier years is directly relevant, but rather because it is part of the circumstantial evidence that tends to show that such practices continued during the relevant period (a point on which plaintiff has little or no direct evidence). That does not mean that *everything* surrounding the use of round tabling and scrubbing at those earlier dates is admissible. Without evidence that defendants continued to report on the dollar effects of these practices during the relevant time period – evidence that plaintiff concedes he does not have – the earlier memoranda are at most marginally relevant. The same is true of evidence of the apparent motivation for the original institution of these practices many years before the relevant time period. The unfair prejudice and diversion of the trial onto a side-track that would result from admission of this evidence far outweighs that limited probative value. The Court therefore excludes evidence of the $423 million reserve and the 1995-97 reports pursuant to Federal Rule of Evidence 403. We will, however, permit plaintiff to attempt to elicit succinctly, in testimonial form, that the practices of round tabling and scrubbing had a

positive effect on defendants' finances.

### 15. Argument regarding "alter ego" issue

Lastly, defendants seek to preclude Brennan from "obfuscat[ing] the corporate separateness" of Paul Revere, Provident Life and UnumProvident. The motion is denied. As the Court held in ruling on defendants' motions for summary judgment, there is some question as to which defendant was responsible for handling – and rejecting – Brennan's claim and which company the relevant employees actually worked for at any given time. *See Brennan v. Paul Revere*, No. 00 C 0725, 2002 WL 54558, at *3 (N.D. Ill. Jan. 15, 2002). And we will not preclude Brennan from pursuing an alter ego theory at trial. Defendants' argument in this regard is really that the evidence supporting an alter ego theory would be insufficient to support a jury verdict. The Court cannot assess the sufficiency of the evidence until we hear it. Defendants should renew their request, if appropriate, in a Rule 50 motion at the close of plaintiff's case and/or at the close of the evidence.

## C. Defendants' Motion to Bar Testimony & Opinions of Susan Scanlan

Defendants have moved to exclude the testimony of Susan Scanlan, a board certified occupational therapist, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). After hearing argument at the second session of the final pretrial conference, the Court stated that it was denying defendants' motion. However, after giving the matter further thought, the Court has reconsidered this ruling on its own motion, and wishes to hear additional argument from counsel prior to jury selection at 9:45 a.m. on June 17, 2002.

### D. Jury vs. Bench Trial

Brennan made a jury demand, but defendants argued that he was not entitled to a jury on the section 155 claim as a matter of Illinois law. When the Court asked the parties to brief the issue of Brennan's right to a jury trial on the section 155 claim, Brennan essentially conceded the point, withdrawing his jury demand so that both claims would be determined by the same finder of fact. Defendants, however, did not consent to the withdrawal of the jury demand, *see* Fed. R. Civ. P. 38(d), so we are required to address the issue briefly. We agree with defendants that as a matter of Illinois law – the only basis on which the parties argued the issue – Brennan is not entitled to a jury trial on the section 155 claim. *See, e.g., Horning Wire Corp. v. Home Indemnity Co.*, 8 F.3d 587, 590 (7th Cir. 1993) (deciding the issue as a matter of Illinois law).[2]

### Conclusion

For the reasons explained in this Memorandum Opinion, the Court denies plaintiff's first motion *in limine*; grants in part and denies in part his second motion *in limine*; and grants his third motion *in limine* [docket items 109-1, 110-1 & 111-1]. In addition, the Court grants in part and denies in part defendants' motion *in limine* [112-1] as stated in this Opinion, and defers ruling on defendant's motion to bar the testimony and opinions of Susan Scanlan [113-1]

Dated: June 10, 2002

_____
MATTHEW F. KENNELLY
United States District Judge

---

[2] Brennan has not argued that the Seventh Amendment entitles him to a jury trial on the §155 claim and is therefore deemed to have waived the point. *See generally A. Kush & Associates, Ltd. v. American States Insurance Co.*, 927 F.2d 929, 940 (7th Cir. 1991) (rejecting a Seventh Amendment argument in this context, but on the basis of harmless error).

17